IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KENNETH RAY SANDERS, #08490-007
F.C.I. Gilmer
P.O.B. 6000  Petitioner,
Glenville, W. VA. 26351
And

Warden Joyce Francis,

U.S. PAROLE COMMISSION, FEDERAL BUREAU

OF PRISONS, D.C. DEPARTMENT OF

CORRECTIONS, ET. AL.,

Respondents

Case: 1:07-cv-01696
Assigned To : Unassigned
Assign. Date : 9/24/2007
Description: Habeas Corpus/2255

**RECEIVED**

AUG 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Habeas Corpus

**Comes Now**, Kenneth Rays Sanders, Pro Se', Petitioner, henceforth Pet., moving this honorable court to grant his Writ of Habeas Corpus to address the deprivation of his lawful right to liberty. An act committed by the respondents, henceforth respondents, by failing to properly compute and credit his actual jail time and Institutional Good Time Credits. Acts which has him now imprisoned past his release date, as his term of imprisonment, minus his institutional good time, has expired. In support of this motion Petitioner states the following:

1. Petitioner was arrested on December 18, 1989 and ultimately convicted of three counts of Burglary II with other underlying offenses for which he received and aggregated sentence of 4 to 12 years. Petitioner had not been released from imprisonment following his arrest on December 18, 1989 until his initial parole release on August 20, 1993.

**RECEIVED**

AUG 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

- 1 -

## JAIL TIME

2. since his arrest on December 18, 1989, Petitioner has been placed on parole and subsequently reparoled following revocation for various parole violations. The following dates and places of confinement chart Petitioners actual jail time and confirm his claim:

**D.C. Jail**        De. 18, 1989 thru Aug. 20, 1993           3yrs    8 mos.
Pet. Was arrested and remained in custody until his initial parole in August of 1993

**Lorton**          Oct. 17,1994 thru Mar. 17, 1997           2yrs.   5 mos.
Pets. parole was revoked. Reparoled on Mar. 17, 1997 following C.C.C. violation

**Greensville**     May 1999 thru Oct. 21, 2000               1yr     5 mos.
Pets. parole revoked. Reparoled on October 21, 2000 from C.C.C.

**Rivers Corr. Inst.**    Dec. 8,2001 thru May 8, 2003        1yr.    5 mos.
Pets. parole revoked following new arrest in Arlington, Va. Where he served 14 months Pet. Received credit for the time served in Arlington and was reparoled after a complete service of 17 months.

**Butner L.S.C.I.**   8 mos. sanction with 1. 5 mos. C.C.C.   0 yrs  9.5 mos
Pets. parole was revoked and he received 8 months sanction with C.C.C. placement following parole date of October 9, 2001 for Public Law Placement where he remained from October 9, 2004 thru November 24, 2004, totaling 9.5 months of incarceration.

**Rivers Corr. Inst.**    July 12, 2005 thru July 12, 2006    1 yr.   0 mos.
Pets. parole was revoked and he was reparoled on July 12, 2006 after one year.

3. When properly computed, all of Pets. Jail time came to a total of more than approximately 10 years, 10 months with the other individual days that he cannot confirm at this present time due to the fact that he does not currently have records from his institutional and parole files which

are in the possession of the Respondents. However; those records will confirm Pets. figures. Respondents records have served to deprive Pet. of his actual jail credits and now threaten to have him remain incarcerated and under supervision well past his true date of release from parole, as Pet. recently received one year in sanctions for a recent parole violation which would deprive him of his lawful right to liberty by over six (6) months.

## Good Time

## Statutory & Institutional

4. Since Pet. was convicted for violations of D.C. Statutes in 1990 for crimes that occurred in 1989, He, under the laws governing Good Time Credits at that time received approximately four years of good time credit. Part deducted from his minimum number of years in his sentence for early parole (4 years), and part from the maximum number of years in his sentence (12 years), awarded in lump sums in accordance with *CDCR 28-601.3*, which was based on rates set forth in §2 of D.C. Law 6-218, D.C. Code § 24-428(1987 Supp) (*See CDCR 28-601*) These credits were contingent upon Pet. not having any of his good time forfeited for institutional violations. These credits could only be forfeited by the Director of that institution following a full hearing which is conducted in accordance with the rules. (*See D.C. Code §24-221.04 Forfeiture [Formerly § 24-432]*) Since this did not occur at any time during Petitioners terms of incarceration, Petitioners good time served to commute his sentence by the amount of good time awarded. (See **§24-406(a) [Formerly 24-206]**) which states: If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence

originally imposed less any commutation for good conduct which may be earned by him after his return to custody. Petitioner following each return to custody earned good time credits which were initially awarded in lump sums in accordance with CDCR 28-601.3. The definition of commute, per Blacks Law Dictionary is : **Commutation 1. an exchange or replacement.** In other words; If a prisoner maintained clear conduct while in the institution, part of his prison term would be replaced by or exchanged for his freedom according to the number of days awarded.

5. What this meant for D.C. Code offenders, during that time Pet. was charged, convicted, and ultimately sentenced was that; as long as the inmate maintained clear conduct and did not have his good time forfeited in accordance with *D.C. Code § 24-221.04 Forfeiture* , said inmates maximum term of imprisonment would be reduced to reflect the original terms minus the amount of good time credits awarded, in lump sum, in accordance with *CDCR 28-601.3* to give a projected initial parole eligibility date and a mandatory release date. This cut an offenders sentence drastically, but for demonstrating good conduct while in the institution. Pet. also earned this reduction regardless of whether he violated parole at any time under *§24-406(a) [Formerly §24-206]* which states: "If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody".

6. Therefore; Although Petitioner was returned to custody for several parole violations,

his good time credit was attached to each term, lessening his original sentence after each term by the amount of credits previously awarded in accordance with the rates set forth in §2 of D.C. Law 6-218, D.C. Code 24-428 (1987 Supp.) which applied to Petitioner at the time of his violation of the law. So long as Petitioners' good time, earned while incarcerated, and not street time spent on parole, was not forfeited for any institutional misconduct. Petitioner has therefore earned ten (10) years and eleven (11) months worth of good time credits. Each time Petitioner was returned to custody his sentence was commuted by the amount of good time earned on each term of imprisonment.

7. While early parole was devised to keep an offender on a proverbial leash while in society until his sentence, through supervision, expired or was terminated; Mandatory Release actually shortened the full term date by the deduction of the amount of good time awarded and maintained, rendering an early **termination date** of no less than 180 days prior to the **full term** date, or date the entire sentence expired if an offender was in Mandatory Release status.

> **Example**: If an offender, under the old law, reached mandatory release status and he was released from prison with 365 days remaining on his complete sentence prior to reaching full term and there were no forfeitures of good time credits, statutory or institutional, his parole supervision was terminated 180 days prior to the completion of that remaining 365 days and his obligation to the courts would then be completed.

8. Petitioner has, to date, never had any of his good time forfeited under any applicable laws governing such good time that were in place during the time he was charged and ultimately convicted for his offenses. Any other regulation or guideline

applied retroactively that would deprive Pet. of his early parole and ultimately prolong his sentence would violate Ex-Post Facto Clause. (*See U.S.C.A. Const. Art. 1, § 9, cl. 3. ;*)

9. Respondents, through their incompetence, have denied Petitioner his good time of 180 days as he, upon his release from prison on July 12, 2006, was in Mandatory Release status. This was due to the facts that: I) Pet. was sentenced, if the Good Time Credits Act of 1986 could not apply, under old law that existed prior to the National Capitol Revitalization and Self Government Improvement Act and any new law which deprived him of any credits awarded under old law would serve to deprive him of his liberty. II) Although Respondents errors went unnoticed and uncorrected at the time, Pet. now stands to suffer further injustices by having his time increased by over one and a half years *(See Warrant Application dated February 7, 2007 and 28 C.F.R. 2.87 (b) Mandatory Release)*, as he has served over approximately ten (10) years and eleven (11) months of a twelve year sentence *(See Jail Time Pp.2)*, which left him, upon his release in July 2006 with only one (1) year remaining on the total sentence. Six of which, by old law and Respondents applied admission on the Warrant Application, would leave him with only seven(7) months of time to serve before termination. Pet. met that requirement as of January 17, 2006 or prior.

10. If the Respondents would contend that the law, prior to the Good Time Credit Act of 1986, could not be applied in Pets. case then it is only proper and legally binding that the G.T.C.A. have applicability due to the fact that it, being the only other law

- 6 -

applicable during the time Pet. was arrested and convicted, prior to the enactment of the National Capitol Revitalization and Self Government Improvement Act is the only other law that could apply in this case. Any attempts to apply the regulations of that Act would violate Pets. rights and deprive him of the lawful liberty that would have been his under either of the laws prior to the National Capitol Revitalization and Self Government Improvement Act., violating the Ex-Post Facto Clause. This being the case, Petitioners' status, being that of Mandatory Release, mandated that he receive release from his obligation to the court "less the time deducted for any good time allowances provided by statute" "except that if the offense of conviction was committed before April 11, 1987( when the old law was repealed), such expiration date shall be less one hundred eighty (180) days". *( See 28 C.F.R. § 2.87(b) Mandatory Release)*

**Wherefore;** Petitioner prays this honorable court grant him his petition for writ of habeas corpus and issue an order for the respondents to correctly recompute all of Petitioners time spent in jail from his initial incarceration through his subsequent periods in jail for parole violations , properly place his case in mandatory release status, apply all statutory and institutional good time credits which were applicable upon his arrest and conviction in 1989, and reissue him a Notice Of Action informing him of his release and the termination of his parole 180 days prior to the newly computed amount of time remaining on his sentence. Petitioner further prays this honorable court to order this action and return response within 15 days of this Motion and set this matter for hearing before the court within 30 days of the date of this

motion.

                                      Respectfully Submitted

                                      Kenneth R. Sanders, Pro Se'
                                      Petitioner

1 of 1 DOCUMENT

WEIL'S CODE OF D.C. MUNICIPAL REGULATIONS
Copyright (c) 2004 by Weil Publishing Co., Inc.
All rights reserved

*** THIS DOCUMENT IS CURRENT THROUGH THE AUGUST 2004 REVISIONS ***

TITLE 28. CORRECTIONS, COURTS & CRIMINAL JUSTICE
CHAPTER 6. INSTITUTIONAL AND EDUCATIONAL GOOD TIME CREDITS

*CDCR 28-601 (2004)*

28-601. INSTITUTIONAL GOOD TIME CREDITS-GENERAL PROVISIONS

601.1 For persons sentenced on or after April 11, 1987, the award of institutional good time credits shall be based on the rates set forth in § 2 of D.C. Law 6-218, D.C. Code § 24-428 (1987 Supp.).

601.2 Each resident already incarcerated in a District of Columbia correctional facility and sentenced prior to April 11, 1987, who was convicted of a violation of a District of Columbia criminal law by a court in the District of Columbia, shall be entitled to institutional good time credits on the remaining portion of the minimum sentence to be served beginning April 11, 1987, in accordance with § 2 of D.C. Law 6-218, D.C. Code § 24-428 (1987 Supp.).

601.3 The total number of institutional good time credits to which a resident is entitled shall be awarded in lump sums on the minimum and maximum sentences when these sentences are initially computed, so as to provide a projected initial parole eligibility date and a date upon which release shall become mandatory.

601.4 Forfeitures of institutional good time credits shall be applied to the total amount of institutional good time credits that a resident may earn over the life of the resident's sentence less any credits that have been previously forfeited but not restored.

601.5 Institutional good time credits may be earned without regard to the award of educational good time credits.

601.6 Time spent on parole as a result of the offense for which the sentence was imposed shall be credited toward service of the maximum sentence.

601.7 Revocation of parole shall not result in a loss of credit, for the time spent on parole, toward service of the sentence on which parole was granted.

601.8 The Parole Board's issuance of an arrest warrant for a parolee tolls the parole status pending further action by the Parole Board.

601.9 When the Parole Board revokes parole for a parolee returned to custody under an arrest warrant, the time between the issuance of the warrant and the execution of the warrant shall not be credited toward service of the sentence.

601.10 When the Parole Board does not revoke parole of a parolee returned to custody under an arrest warrant, the time between the issuance of the warrant and the execution of the warrant shall be credited toward service of the sentence.

601.11 When a parolee is returned to custody under a warrant or commitment detainer due to a new charge that subsequently results in dismissal or acquittal, the time spent in custody shall be credited toward the sentence on which the warrant or commitment detainer was based.

History of Rules since Last Compilation by Agency (May 1987)

07 1696

FILED

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

U.S. DEPARTMENT OF JUSTICE WARRANT APPLICATION
UNITED STATES PAROLE COMMISSION D.C. Code Offender

Name .............................. Sanders, Kenneth

Reg. No .......................... 08480-007
DCDC No ....................... 243-923
FBI No ............................ 425 756 W6
Birth Date ....................... 3-29-61
Race ............................... Black

Date .......................................... February 7, 2007
Termination of Supervision ..... 1-14-2009
[If Conviction Offense Before April 11, 1987 And Offender Is On Mandatory Release, Termination Date Is 180 Days Prior To Full Term]
Violation Date .......................... 7-17-2006
Released ................................... July 12, 2006

Sentence Length ........... 12 years (Aggregate Original); 1,282 days (Parole Violator Term)
Original Offense ............. Burglary II; Attempted Theft; Destruction of Property

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired.

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

## CHARGES:

**Charge No. 1 - Use of Dangerous and Habit Forming Drugs.** The releasee submitted urine specimens which tested positive for:
Cocaine – 7-17-2006, 7-18-2006, and 8-3-2006.
This charge is based on the information contained in the violation report dated 12-18-2006 from supervising officer Robert Evans and corresponding drug report dated 12-18-2006.
I ADMIT [ ] or DENY [ ] this charge.

## Certificate Of Service

I, Kenneth Ray Sanders, do attest under penalty of perjury that a true and exact copy of the enclosed Motion Under Title 28 U.S.C. §2241 and Motion Under Title 28 U.S.C. §1915 were forwarded, via First Class U.S. Postage to The Federal Bureau Of Prisons at 320 First St. N.W. Washington, D.C. 20001; The U.S. Parole Commission at 5550 Friendship Blvd., Chevy Chase, Md. 20815-7286; The D.C. Dept. Of Corrections at 1923 Vermont Ave. N.W. Washington D.C. 20001; And one copy to Warden Francis, via institutional mail on this 26 day of July 2007

Respectfully Submitted,

Kenneth R. Sanders
Fed. Reg. #08480-007